**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HLEB PIATUKHO,<br>Petitioner<br><br>v.<br><br>WARDEN J.L. JAMISON, *et al.*,<br>Respondents | :<br>:<br>:<br>:<br>:<br>:<br>: | No. 2:26-cv-6413 |

**OPINION**
**Petition for Writ of Habeas Corpus, ECF No. 1 – Dismissed**

**Joseph F. Leeson, Jr.** **September 15, 2026**
**United States District Judge**

## I. INTRODUCTION

Petitioner Hleb Piatukho filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by immigration officials pursuant to 8 U.S.C. § 1226(a). This detention could have been reviewed in the immigration court, but Piatukho chose not to pursue administrative remedies. The instant petition is therefore dismissed.

## II. BACKGROUND

Piatukho, a native and citizen of Belarus, entered the United States pursuant to a nonimmigrant visa[1] in April 2021. *See* Pet. ¶ 24, ECF No. 1. The terms of that visa permitted him to remain in the United States for a temporary period not to exceed June 10, 2021. *See* Resp. Ex. B at 2. Piatukho remained in the United States beyond this temporary period. *See id.*; Pet. ¶ 25. He submitted an application for asylum, which remains pending. *See* Pet. ¶ 24. On August 26,

[1] Piatukho alleges he was admitted to the United States pursuant to an "O visa," *see* Pet. ¶¶ 2, 3, 24, but immigration paperwork shows he was admitted as a nonimmigrant Athlete or Entertainer ("P1 visa"), *see* Resp. Ex. B at 2, ECF No. 6-2. The difference is not dispositive here.

2026, Piatukho was detained at Philadelphia International Airport while attempting to board a domestic flight to Florida. *See id.* ¶ 26. He is being detained pursuant to 8 U.S.C. § 1226(a). *See id.* ¶¶ 29, 43; Resp. 2, ECF No. 6.

On August 28, 2026, Piatukho filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 asserting that Immigration and Customs Enforcement ("ICE") did not comply with the discretionary framework of 8 U.S.C. § 1226(a). *See* Pet. ¶ 10. Specifically, Piatukho alleges that at the time of his arrest, the Department of Homeland Security ("DHS") "had not commenced removal proceedings, identified any basis for finding him dangerous or likely to flee, or provided him with an individualized opportunity to demonstrate that detention was unnecessary." *Id.* ¶ 10. Piatukho, "challeng[ing] the statutory authority for his detention and the legal framework under which Respondents are detaining him," contends that he has been detained in violation of the Immigration and Nationality Act ("INA") and Fifth Amendment due process. *See id.* ¶¶ 35-64.

In a response filed on September 4, 2026, the Government explains that Piatukho is being detained under the discretionary provisions of § 1226(a) pending removal proceedings. *See* Resp. 3, ECF No. 6. DHS made an initial custody determination the same day Piatukho was arrested and exercised discretion in detaining him and initiating removal proceedings. *See id.* at 6 and Ex. B. He has an initial master calendar hearing before the Elizabeth Immigration Court on September 16, 2026. *See id.* at 3. The Government argues the petition should be denied because: (i) this Court lacks jurisdiction under 8 U.S.C. § 1252(g); (ii) Piatukho is lawfully detained under 8 U.S.C. § 1226(a), which affords him the opportunity to seek administrative review of his detention through a custody redetermination hearing before an immigration judge and, later, the Board of Immigration Appeals ("BIA"); and (iii) Piatukho's detention does not violate the Fifth Amendment's Due Process Clause. *See id.* at 4-11.

In a reply brief, Piatukho contends that the Government misunderstood his claim. *See* Reply 4, ECF No. 7. Piatukho asserts that he "does not merely disagree with ICE's discretionary decision to detain him, nor does he ask this Court to substitute its judgment for ICE's. The issue is whether ICE made a constitutionally adequate individualized determination before depriving [Piatukho] of his liberty." *See id.* at 4-5 (suggesting there was no evidence that Piatukho is dangerous, likely to flee, or unable to comply with conditions of release). Among other things, he disagrees that § 1252(g) bars his claims, asserts that exhaustion is not an adequate remedy, and contends that ICE did not make the required individualized assessment. *See id.* at 2-6.

## III. LEGAL STANDARDS

### A. Habeas Corpus, 28 U.S.C. § 2241 – Review of Applicable Law

The habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear cases brought by immigration detainees that are being held "in custody in violation of the Constitution or laws . . . of the United States." *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); 28 U.S.C. § 2241(c)(3). "It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). "Although there is no statutory exhaustion requirement attached to § 2241, [the courts] have consistently applied an exhaustion requirement to claims brought under § 2241." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). The exhaustion doctrine is justified by three policy concerns: (1) "deference to Congress' decision, embodied in statute, that an independent administrative tribunal, and not the courts, should serve as the initial forum for dispute resolution"; (2) "respect for administrative autonomy by forbidding unnecessary judicial interruption of the administrative process"; and (3) "foster[ing] judicial economy both by permitting the administrative tribunal to vindicate a complaining party's rights in the course of its

proceedings, thereby obviating judicial intervention, and by encouraging the tribunal to make findings of fact on which courts can later rely in their decisionmaking." *Republic Indus., Inc. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir. 1982).

There are limited exceptions to the exhaustion requirement. "Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). The Third Circuit Court of Appeals has "ruled that these exceptions apply only in extraordinary circumstances." *Republic Indus., Inc.*, 693 F.2d at 294 (internal quotations omitted).

**B. Jurisdiction under 8 U.S.C. § 1252(g) - Review of Applicable Law**

Certain provisions of the INA "limit an alien's ability to collaterally attack (challenge) ongoing immigration proceedings through habeas," including 8 U.S.C. § 1252(g). *See Khalil v. President United States of Am.*, Nos. 25-2162 and 25-2357, 2026 WL 111933, at *8 (3d Cir. Jan. 15, 2026). Section 1252(g) states in part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

## IV. ANALYSIS

### A. This Court has jurisdiction.

Contrary to the Government's suggestion, § 1252(g) does not bar review. *See Ubaid v. Jamison*, No. 26-cv-2681-JMY, 2026 U.S. Dist. LEXIS 106445, at *6 (E.D. Pa. May 14, 2026) (holding that § 1252(g) did not strip the court of jurisdiction to hear the habeas petitioner's claim that "the government 'acted arbitrarily' in detaining him under § 1226(a) without making an

'individualized determination' that he is a 'danger or flight risk'"); *De Sousa v. Jamison*, No. 26-CV-4797-WB, 2026 U.S. Dist. LEXIS 160785, at *4 (E.D. Pa. July 21, 2026) (same). The Supreme Court has held that § 1252(g) only refers to actions "to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). In his petition, Piatukho does not challenge the commencement of his removal proceedings, the Attorney General's decision to adjudicate his case, or the execution of a removal order. Also, he does not have a final order of removal. Rather, he contests DHS's decision to detain him pending removal proceedings.

The fact that this decision was made at the same time removal proceedings were initiated does not, contrary to the Government's suggestion, make "the two actions inextricably intertwined and, consequently, not reviewable by this Court under 8 U.S.C. § 1252(g)." *See* Resp. 5. The decision to commence removal proceedings and to detain Piatukho were separate actions. Holding otherwise would render the phrase "initial custody determination" in the INA, *see* 8 C.F.R. § 236.1(d)(1), surplusage. Similarly, the provision in the INA authorizing the officer issuing an arrest warrant to "in the officer's discretion, release an alien," 8 C.F.R. § 236.1(c)(8), would be insignificant. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted).

**B. Piatukho has not exhausted administrative remedies.**

Although this Court has jurisdiction, the petition is not properly before the Court at this time because Piatukho has not exhausted administrative remedies. "The administrative remedies under § 1226(a) and its implementing regulations are: (1) the detained noncitizen may request a

bond redetermination hearing before an immigration judge; and (2) the noncitizen may appeal the immigration judge's bond decision to the [BIA]." *Gomez v. Jamison*, No. 26-3879, 2026 U.S. Dist. LEXIS 149870, at *6 (E.D. Pa. July 6, 2026). *See also* 8 C.F.R. §§ 236.1(d)(1), 236.1(d)(3), 1003.19(a). Piatukho "does not dispute that he may request a bond hearing before an Immigration Judge." Reply 5. But instead of pursuing administrative remedies, he filed the instant habeas petition in this Court. Piatukho offers no explanation for his failure to exhaust administrative remedies, except to argue that a "later bond hearing cannot undo the time [he] has already spent incarcerated." *See id.* at 4. This argument does not satisfy any of the three exceptions to exhaustion, nor are there "extraordinary circumstances" in this case to warrant application of any of the exceptions. *See Republic Indus., Inc.*, 693 F.2d at 294

First, although a "later bond hearing cannot undo the time [Piatukho] has already spent incarcerated," *see* Reply 4, this is also true with respect to this Court as no one can undo the time he has spent in custody. A bond redetermination hearing before an immigration judge can provide the same relief Piatukho asks of this Court- release (or detention after an individualized assessment). Accordingly, the nonjudicial remedy is not inadequate to prevent irreparable injury and the first exception to exhaustion does not apply. *See Lyons*, 840 F.2d at 205.

As to the second exception- when resort to the nonjudicial remedy would "clearly and unambiguously violate statutory or constitutional rights"- Piatukho has not made a sufficient showing. Notably, he argues that his current detention is unconstitutional because ICE detained him without an individualized determination, *see* Reply 2, not that requiring him to resort to administrative remedies is unconstitutional (aside from prolonging his detention). *But see Hawkins v. Fci-Allenwood*, No. 3:25-cv-165, 2025 U.S. Dist. LEXIS 106528, at *5 (M.D. Pa. June 5, 2025) (rejecting the petitioner's argument that exhaustion should be excused because the matter

is time sensitive). Requiring exhaustion is "particularly important in the resolution of cases involving constitutional issues," as here. *See Republic Indus., Inc.*, 693 F.2d at 293 ("If the administrative tribunal decides a case on nonconstitutional grounds, the court may find it unnecessary to proceed with constitutional adjudication. In this way, exhaustion furthers the concept of judicial restraint."). Moreover, the absence of an individualized determination is not clear as DHS specifically noted Piatukho's immigration history, pending asylum application, lack of criminal history, good health, and the absence of any family ties in the United States. *See* Ex. B at 1-3 (noting that Piatukho is single, does not have any children, and that both his mother and father are citizens of Belarus).

Finally, there is no argument or evidence that exhaustion would be futile. Piatukho made no attempt to exhaust administrative remedies; instead, he filed the instant habeas petition in this Court only two days after DHS's initial custody determination. *Accord Doe v. Jamison*, No. 26-1906, 2026 U.S. Dist. LEXIS 68893, at *8 (E.D. Pa. Mar. 31, 2026) (determining that where the government frustrated the petitioner's attempt to seek a bond redetermination hearing, exhaustion was excused). *See also Ubaid*, 2026 U.S. Dist. LEXIS 106445, at *9 ("Speculation that a claim is merely unlikely to prevail in the administrative process based on statistical trends does not make raising that claim futile."). The third exception to exhaustion also does not apply.

Until Piatukho exhausts administrative remedies, "the merits of his claims are not yet ripe for habeas review." *De Sousa*, 2026 U.S. Dist. LEXIS 160785, at *5-6 (denying the habeas petition, which alleged that the petitioner was unlawfully held pursuant to § 1226(a) pending removal proceedings because no individualized determination was made that he was a flight risk or danger to the community, because "administrative remedies have not been activated, much less exhausted"). *See also Ubaid v.*, 2026 U.S. Dist. LEXIS 106445, at *8 ("The Court will not review

the merits of the government's § 1226(a) custody determination because Petitioner has not exhausted the prescribed procedures for that determination to be reviewed administratively."); *Doe*, 2026 U.S. Dist. LEXIS 68893, at *7 (holding that the due process claims could not be considered because there were "no applicable statutory exhaustion requirements" and the petitioner was "detained pursuant to 8 U.S.C. § 1226(a), which provides for an administrative review of his detention").

## V. CONCLUSION

Piatukho alleges that he was detained without an individualized initial custody determination pending removal proceedings and was therefore denied due process. However, he was afforded the opportunity to have an immigration judge review this determination, which he could have appealed to the BIA if unfavorable, but failed to take advantage of these administrative remedies. Because there are no applicable exceptions to the exhaustion requirement, the petition is dismissed for failure to exhaust.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_______
JOSEPH F. LEESON, JR.
United States District Judge